FILED
2026 Aug-31 PM 03:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

**METROPOLITAN LIFE INSURANCE COMPANY,**
Plaintiff,

**v.**

**PHILLIP WILLIAMS, JR.,** ***as personal representative of the Estate of Roslyn Marshall Smith*****,** ***et al.*****,**
Defendants.

**Case No. 4:24-cv-00357-CLM**

## MEMORANDUM OPINION

This is an interpleader case about Jan Ehemann's life insurance policy. Ehemann participated in the General Motors Life and Disability Benefits Program, an ERISA-governed employee welfare benefit plan sponsored by his employer General Motors and funded by MetLife. (Doc. 1, ¶ 9). When Ehemann died in 2023, his purported wife, Roslyn Smith, was listed as the sole beneficiary on the policy.[1] (*Id.* ¶ 15). But MetLife did not distribute the proceeds to Roslyn because Ehemann's three daughters from a prior marriage made a competing claim to the proceeds. (*Id.* ¶ 20). MetLife then filed this interpleader action so that the court could resolve the competing claims. (Doc. 1). Before the court are Roslyn's and the Ehemann daughters' cross-motions for summary judgment. (Docs. 45, 46).

For the reasons stated within, the court holds that Ehemann's daughters are entitled to the proceeds under the policy. So the court

[1] The court refers to Roslyn by her first name to distinguish her from her first husband, Willie Smith. Roslyn also died after this case was filed and now her Estate appears on her behalf.

**GRANTS** the Ehemann daughters' motion for summary judgment (doc. 46) and **DENIES** Roslyn's motion for summary judgment (docs. 45, 50).

## BACKGROUND

The dispute centers on whether Ehemann properly followed the policy's procedures for changing beneficiaries. Ehemann named Roslyn as his beneficiary via a March 2020 phone call with a MetLife agent. Roslyn argues that the phone call satisfied the policy's provisions governing beneficiary changes, making her the sole beneficiary. The daughters argue that the policy did not allow Ehemann to change beneficiaries by phone call. Instead, the daughters argue that the policy required Ehemann to name a new beneficiary in writing on a form provided by MetLife.

The daughters further argue that if Roslyn was not validly designated as beneficiary, then the policy's "No Beneficiary at Your Death" provision should kick in. That provision provides for an order of distribution if there is not a valid designated beneficiary. And the daughters argue that it applies here because the last beneficiary designated in writing—Ehemann's prior wife, Sharon DeVarona—predeceased Ehemann.

The daughters also argue that Roslyn is not a valid beneficiary because of fraud and undue influence. These arguments arise from the suspicious circumstances surrounding Roslyn's marriage to Ehemann. Roslyn was married to another man—Willie Smith—at the time she married Ehemann.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and

identifying those portions of the record showing the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323. The burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Id.* at 325. When the moving party has carried its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323.

The standard of review on cross-motions for summary judgment is no different from the standard applied when only one party files a motion. *Torres v. Rock & River Food Inc.*, 244 F. Supp. 3d 1320, 1327 (S.D. Fla. 2016) (citing *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005)). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (internal quotation marks and citation omitted). Thus, "a court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." *Torres*, 244 F. Supp. 3d at 1327–28 (citing *Am. Bankers Ins. Grp.*, 408 F.3d at 1331).

## DISCUSSION

### I. Motions for Summary Judgment

The two key issues in this case are: (i) whether Ehemann's phone call with MetLife validly designated Roslyn as the beneficiary; (ii) if not, whether Roslyn can still receive the proceeds as Ehemann's "spouse"

under the policy's "No Beneficiary at Your Death" provision. The court addresses these issues in turn below.

### A. Did Ehemann validly designate Roslyn as beneficiary?

ERISA governs Ehemann's life insurance policy. (Doc. 1, ¶ 9). And the "cornerstone of an ERISA plan is the written instrument." *Hunt v. Hawthorne Assoc., Inc.*, 119 F.3d 888, 891 (11th Cir. 1997); *see also* 29 U.S.C. § 1102(a)(1) ("Every employee benefit plan shall be established and maintained pursuant to a written instrument."). That's why ERISA requires "administrators to manage ERISA plans 'in accordance with the documents and instruments governing' them." *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 288 (2009) (citing 29 U.S.C. § 1104(a)(1)(D).

Both the daughters and Roslyn argue that the "documents and instruments" of Ehemann's policy should govern the outcome here. (*See* doc. 49, p. 14; doc. 50, p. 14). But they argue for different interpretations of the policy's documents. The daughters argue that the policy's beneficiary provision requires changes to be made "in writing on a form," meaning that Ehemann's phone-call change was ineffective. (Doc. 49, p. 12). Roslyn counters that the policy permits phone-call changes because it defines "ENROLLMENT FORM" to include "an election made through a *telephone*." (Doc. 50, p. 12). Both provisions are listed below:

**BENEFICIARY**

**1. Your Beneficiary**

The "Beneficiary" is the person or persons YOU choose to receive any benefit payable because of YOUR death.

YOU make YOUR choice in writing on a form approved by us. This form must be filed with the records for THIS PLAN.

YOU may change the Beneficiary at any time by filing a new form with us. YOU do not need the consent of the Beneficiary to make a change. When we receive a form changing the Beneficiary, the change will take effect as of the date YOU signed it. The change of Beneficiary will take effect even if YOU are not alive when it is received, provided such change of beneficiary is received prior to the payment of benefits. Any beneficiary designation made for Basic Life Benefits will also apply to Accidental Death or Dismemberment Benefits.

A change of Beneficiary will not apply to any payment made by us prior to the date the form was received by us.

15. "ENROLLMENT FORM" means the form on which the EMPLOYEE indicates the amounts of PERSONAL and DEPENDENT BENEFITS for which the EMPLOYEE wishes to enroll under THIS PLAN. Such form may be a paper ballot or an election made through a telephone or other electronic enrollment system. The enrollment information is maintained with the EMPLOYEE'S insurance records relating to THIS PLAN.

The "rules of contract interpretation" generally apply when interpreting ERISA plans. *Alexandra H. v. Oxford Health Ins. Inc. Freedom Access Plan*, 833 F.3d 1299, 1307 (11th Cir. 2016). And the first step is to look at the text of the plan. *See Hill v. Emp. Benefits Admin. Comm. of Mueller Grp. LLC*, 971 F.3d 1321, 1327 (11th Cir. 2020). Defined plan terms should be interpreted according to the definition, while undefined terms should be interpreted according to their "ordinary meaning." *See id.*

There is no need to go beyond the first step here because the policy's text is clear: beneficiaries must be designated in writing. The beneficiary provision explains that a participant must make changes "in writing on a form," and those changes take effect when "signed." And nothing in the beneficiary provision mentions phone-call changes. So Ehemann failed to validly designate Roslyn as his beneficiary because he did not designate her "in writing on a form" that he signed.

The enrollment form definition does not alter that result. As the daughters point out, the enrollment form definition "pertains to enrolling in coverages, not the formal legal process of designating a beneficiary." (*See* doc. 55, p. 5). In other words, the enrollment form definition is not applicable to the beneficiary provision.

The policy's defined terms section reinforces that conclusion. Defined terms "appear capitalized throughout" the policy. (Doc. 46-5, p. 1). For example, Page 19 of the policy uses the term "ENROLLMENT FORM" in all caps. (*Id.*, p. 19). Same with other defined terms like "YOU," "ANNUAL BASE WAGE," "BASE HOURLY RATE" etc. (*Id.*). But the beneficiary provision does not use the term "ENROLLMENT FORM" in all caps—it uses the phrase "in writing on a form," which is a non-defined term. So the ordinary meaning of that phrase applies. *See Hill*, 971 F.3d at 1327. And a phone call does not fall within the ordinary meaning of "in writing on a form."

Roslyn next makes an estoppel argument. (*See* doc. 50, p. 10). The ERISA estoppel doctrine allows the insured to estop the insurer from

denying benefits based on the insurer's prior oral representations about ambiguous plan provisions. *See Alday v. Container Corp. of Am.*, 906 F.2d 660, 666 (11th Cir. 1990). But the estoppel doctrine does not apply here because this is an interpleader case, not a dispute between the insured and the insurer. *See Liberty Life Assurance Co. of Boston v. Kennedy*, 358 F.3d 1295, 1302 (2004). So the communications between MetLife and Ehemann are irrelevant.

Roslyn also appears to make an argument based on the federal common law "substantial compliance" doctrine, although without citing to any authority. (*See* doc. 50, p. 13). Under the substantial compliance doctrine, a court can hold that a beneficiary change was valid if the insured intended to change a beneficiary but failed to comply with the technical requirements. *See, e.g.*, *Phoenix v. Mut. Life Ins. Co.*, 30 F.3d 554, 564 (4th Cir. 2004).

The court refuses to apply this doctrine because the Eleventh Circuit has never adopted it. *See Liberty Life*, 358 F.3d at 1302; *Principal Life Ins. Co. v. Smith*, 2009 WL 10687897, at *7 (N.D. Ala. Dec. 14, 2009). The doctrine's viability is also unclear after the Supreme Court's *Kennedy* decision, which emphasized strict adherence to ERISA plan documents. *See Ruiz v. Publix Super Mkts., Inc.*, 248 F. Supp. 3d 1294, 1303 (M.D. Fla. 2017).

Finally, the daughters argue that Roslyn is not a valid beneficiary because Roslyn exercised undue influence over Ehemann or otherwise fraudulently induced Ehemann to designate her as the beneficiary. (*See* doc. 49, p. 17). These arguments need not be addressed because the policy's text resolves whether Roslyn was properly designated as the beneficiary.

—

For those reasons, Ehemann's phone call failed to designate Roslyn as his beneficiary per the policy's requirements.

**B. Can Roslyn receive the proceeds as Ehemann's "spouse"?**

As explained above, Ehemann failed to validly designate Roslyn as his beneficiary. That leaves Sharon DeVarona, Ehemann's prior wife, as the most recent beneficiary that Ehemann designated in writing. (Doc. 46-7). But this designation has its problems too because DeVarona died *before* Ehemann. (*See* doc. 49, p. 14). And Ehemann's policy states that a "person's rights as a Beneficiary end" if that person dies before the participant—so DeVarona lost her rights as a beneficiary when she died before Ehemann. (Doc. 46-5, p. 45). As a result, Ehemann died without a valid designated beneficiary, triggering the policy's "No Beneficiary at Your Death" provision.

1. <u>"No Beneficiary at Your Death" Provision</u>

Under Ehemann's policy, the "No Beneficiary at Your Death" provision governs when the participant dies without a valid designated beneficiary. Here is the provision:

> **4. No Beneficiary at Your Death**
>
> If there is no Beneficiary at YOUR death for any amount of benefits payable because of YOUR death, that amount will be paid to YOUR estate. However, we may instead, at our discretion, pay all or part of that amount, generally in the following order, to one or more of the following persons who are related to YOU and who survive YOU:
>
> **(a)** spouse;
>
> **(b)** child(ren);
>
> **(c)** parent(s).
>
> Any payment will discharge our liability for the amount so paid.

The provision grants MetLife the discretion to distribute the proceeds either to the participant's estate or to the participant's surviving (a) spouse; (b) children; or (c) parents, respectively. Ehemann's estate does not come into play here because, at this stage of an interpleader case, "the court evaluates the respective rights of the claimants to the interpleaded funds." *Ohio Nat. Life Assurance Corp. v. Langkau ex rel. Est. of Langkau*, 353 Fed. Appx. 244, 248 (11th Cir. 2009). And Ehemann's estate is not a

claimant to the funds. So the next question is whether Roslyn can receive the proceeds under the provision as Ehemann's "spouse."

2. Was Roslyn and Ehemann's marriage valid?

The daughters argue that Roslyn cannot receive the proceeds because Roslyn was never Ehemann's lawful spouse. Roslyn married Ehemann in Georgia in 2014. (*See* doc. 46-10). But she had married Willie Smith in 1999 in Alabama—and Willie did not die until 2021. (*See* docs. 46-9; 46-12). And there is no record of divorce between Roslyn and Willie. (*See* doc. 46-11). So the court agrees that Roslyn's marriage to Ehemann was void. But the court reaches that result by applying Georgia law—not Alabama law as the daughters argued. (*See* doc. 49, p. 9).

Roslyn and Ehemann married in Georgia. (*See* Doc. 46-10). And both Alabama and Georgia apply the law of the state where the marriage occurred to determine its validity. *See State Dep't of Hum. Res. v. Lott*, 16 So.3d 104, 106 (Ala. Civ. App. 2009); *Norman v. Ault*, 287 Ga. 324, 325 (Ga. 2010). So Georgia law governs the validity of Ehemann and Roslyn's marriage.

Georgia law prevents a person from having multiple spouses. "To be able to contract a marriage, a person must have no living spouse of a previous undissolved marriage." Ga. Code Ann. § 19-3-2(a)(3) (citation modified). "Marriages of persons unable to contract . . . shall be void." Ga. Code Ann. § 19-3-5(a). But there is a "presumption that the second marriage is valid until evidence is established that the other spouse of the first marriage" was living at the time of the second marriage. *Johnson v. Johnson*, 239 Ga. 714, 714 (Ga. 1977). Once the party challenging the marriage's validity produces evidence that the first spouse was living at the time of the second marriage, "the burden shifts to the party contending the validity of the second marriage to go forth and show that the first marriage was dissolved by divorce." *Id.* (citing *Zurich Ins. Co. v. Craft*, 120 S.E.2d 922 (Ga. 1961)).

The daughters can overcome the presumption that Roslyn and Ehemann had a valid marriage. They produced evidence that Willie died in 2021—meaning that he was still alive in 2014 when Roslyn and Ehemann married. So the burden shifts to Roslyn to show that her marriage to Willie was dissolved by divorce. *See id.*

Roslyn cannot satisfy her burden because none of the evidence suggests that there was a divorce. For one, a search of Alabama court records yields an absence of divorce records for Roslyn and Willie. (*See* doc. 46-11). And Roslyn's son, Broderick Marshall, testified that he was unaware of any divorce proceedings between Roslyn and Willie. (*See* doc. 49, p. 10–11). Willie's 2021 obituary notice also listed Roslyn as his wife, further suggesting an absence of divorce. (*See* doc. 46-12).

Roslyn's own actions likewise suggest that she never divorced Willie. Roslyn and Willie signed a 2017 mortgage together that listed the couple as "Husband and Wife"—an odd thing for a couple to do if they had divorced. (Doc. 46-13). On top of that, Roslyn made multiple Facebook posts after she had married Ehemann in which she referred to Willie as her husband. (*See* doc. 46-14). So Roslyn cannot show that she divorced Willie under these facts, meaning that her marriage to Ehemann was void.

Roslyn makes two counterarguments, but they both fail. First, Roslyn argues that there is a factual dispute because Broderick Marshall testified that Roslyn and Ehemann lived together and were married. (Doc. 56, p. 18). But Marshall's testimony does not create a factual dispute. His testimony failed to show whether Roslyn and Willie ever divorced, which is the material fact that Roslyn bears the burden to show. Roslyn also argues that ERISA preempts state law "regarding marriage validity." (Doc. 56, p. 15). But preemption is not an issue here because "federal courts routinely rely on state law to identify a participant's spouse" in an ERISA plan. *IBEW Pac. Coast Pension Fund v. Lee*, 462 Fed. Appx. 546, 549 (6th Cir. 2012).

Because Roslyn was not Ehemann's spouse, she cannot receive the proceeds under the "No Beneficiary at Your Death Provision." And when there is no surviving spouse, the policy directs that the proceeds should be distributed to the participant's surviving children. So Ehemann's daughters, as his surviving children, are entitled to the proceeds.

## CONCLUSION

For those reasons, the court **GRANTS** the Ehemann daughters' motion for summary judgment (doc. 46) and **DENIES** Roslyn's motion for summary judgment (docs. 45, 50). The court will enter a separate order consistent with this opinion that grants the Ehemann daughters judgment and closes this case.

**DONE** and **ORDERED** on August 31, 2026.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE